In the Matter of SITE ACQUISITIONS, INC., et al., Appellants, v TOWN OF NEW SCOTLAND et al., Respondents. [770 NYS2d 157]—

Lahtinen, J. Appeal from a judgment of the Supreme Court (Malone, Jr., J.), entered May 14, 2003 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Zoning Board of Appeals of the Town of New Scotland denying petitioners' requests for use and area variances.

During 2001, petitioner Site Acquisitions, Inc. (known then as Tower Ventures, Inc.), Cingular Wireless and petitioner Independent Wireless One Corporation (hereinafter IWO) each conducted separate searches in the Town of New Scotland,

Albany County, for potential locations to place telecommunications facilities to cure service gaps affecting wireless telecommunications in the vicinity. Options pursued by IWO included placing antennae in the steeple of the Community United Methodist Church and on Niagara Mohawk power poles. Site's extensive search, on the other hand, led it to enter into a lease with petitioner Anthony P. Genovisi permitting construction of a tower on property owned by Genovisi in the Town. Originally envisioned to be 190 feet, Site later reduced the proposed height of the tower to 160 feet.

The Genovisi property was zoned R-2 and a tower was not listed as either a permitted or special use. Moreover, there was a 45-foot maximum height for nonresidential structures. In February 2002, Site applied to respondent Zoning Board of Appeals of the Town (hereinafter ZBA) for use and area variances. Cingular and IWO, which planned to share the tower, subsequently joined Site's application. Since the proposed tower was located within 500 feet of a county road, the ZBA forwarded a copy of Site's application to the Albany County Planning Board for its review and recommendation pursuant to General Municipal Law § 239-m.

During the ensuing months there were, among other things, numerous hearings, submissions from engineers, propagation studies regarding the gaps in service, analysis and review as per the State Environmental Quality Review Act, property value assessments, further consideration of alternative sites and various information from an expert retained by a neighborhood association. Eventually, the Albany County Planning Board recommended that the requested variances be denied because of the "potential adverse impact on the views from Thacher State Park and the Helderberg Escarpment, a natural and recreational resource of statewide significance, and the potential availability of alternatives that would mitigate these impacts." The ZBA, by a vote of four to one, followed the recommendation and denied the variances. Petitioners thereafter commenced the current CPLR article 78 proceeding. Supreme Court dismissed the petition and this appeal by petitioners ensued.

Since Site, Cingular and Independent are wireless phone service providers they are each treated as a public utility for zoning purposes and, thus, the general principles governing variances sought by private individuals or entities do not govern their application (see Matter of Cellular Tel. Co. v Rosenberg, 82 NY2d 364, 371 [1993]; Matter of Nextel Partners v Town of Fort Ann, 2 AD3d 89 [2003]; Matter of SBA, Inc. v Schwarting, 299 AD2d 940, 940 [2002]; Matter of Lloyd v Town of Greece Zoning

*Bd. of Appeals,* 292 AD2d 818, 819 [2002], *lv dismissed, lv denied* 98 NY2d 691 [2002]; *Matter of Farrell v Johnson,* 266 AD2d 873 [1999]; *Matter of Cellular Tel. Co. v Meyer,* 200 AD2d 743 [1994]). A telecommunications provider that is seeking a variance for a proposed facility need only establish that there are gaps in service, that the location of the proposed facility will remedy those gaps and that the facility presents a minimal intrusion on the community (*see Matter of Cellular Tel. Co. v Rosenberg, supra* at 373-374; *Matter of Nextel Partners v Town of Fort Ann, supra* at 717; *Matter of SBA, Inc. v Schwarting, supra* at 940). Constraints are also placed on a local municipality's action by the Federal Telecommunications Act of 1996, which provides, among other things, that a municipality cannot prohibit the construction of all wireless facilities (*see* 47 USC § 332 [c] [7] [B] [i] [II]).

A telecommunications provider is not, however, granted "carte blanche authority to dictate the number and location" of its facilities (*Sprint Spectrum v Willoth,* 996 F Supp 253, 257 [1998], *affd* 176 F3d 630 [1999]; *see Matter of Consolidated Edison Co. v Hoffman,* 43 NY2d 598, 610 [1978]; *see also* 47 USC § 332 [c] [7] [A]). When weighing the extent of intrusion of a proposed facility, the municipality may consider, among other things, the aesthetic impact of a facility (*see Sprint Spectrum v Willoth,* 176 F3d 630, 645-646 [1999]; *SiteTech Group v Board of Zoning Appeals of Town of Brookhaven,* 140 F Supp 2d 255, 261 [2001]) and it may reject construction of a particular facility if there is evidence establishing that a service gap can be closed by a less intrusive means (*see Sprint Spectrum v Willoth,* 176 F3d 630, 643-644 [1999], *supra*). A denial of permission to construct a telecommunications facility must be in writing and supported by substantial evidence (*see* 47 USC § 332 [c] [7] [B] [iii]; *Matter of Khan v Zoning Bd. of Appeals of Vil. of Irvington,* 87 NY2d 344, 351 [1996]; *Matter of Cellular Tel. Co. v Rosenberg, supra* at 373). Substantial evidence, while not as great as a preponderance, nevertheless requires more than a mere scintilla and must reflect adequate relevant proof that a reasonable person would accept to support a conclusion (*see 300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 180-181 [1978]; *Matter of Paulsen v Catherwood,* 27 AD2d 493, 495 [1967]; *see also Consolidated Edison Co. v National Labor Relations Bd.,* 305 US 197, 229 [1938]; *Cellular Tel. Co. v Town of Oyster Bay,* 166 F3d 490, 494 [1999]).

Petitioners argue that substantial evidence does not support the ZBA's decision. We cannot agree. The finding that a less intrusive means of remedying the gap in service is available is

supported by substantial evidence. At a meeting in August 2002, Scott Stockman, a representative from IWO, reportedly stated that IWO could gain the desired coverage by placing antennae on three existing power poles. Furthermore, before IWO learned about Site's proposed tower, it had also pursued putting antennae in the steeple of a local Methodist Church and on one of two power poles. The contention that the Methodist Church was not interested in making its steeple available was belied by an affidavit from the church's pastor stating that the lease proposed by IWO had been executed by the church and returned to IWO. Propagation maps comparing the projected coverage provided by the tower with the projected coverage provided by the steeple/power pole combination reflect little obvious discrepancies. Each appears to provide some coverage in some small areas that the other does not cover. There is no proof indicating that the area not covered by the steeple/power pole, which appears minor on the maps, is otherwise significant because of, for example, the number of people that reside in that particular area (*cf. Nextel Partners v Town of Amherst*, 251 F Supp 2d 1187, 1196 [2003]). The information provided by Cingular added little to the germane issue and, in fact, a Cingular representative stated at a meeting that it was relying on data provided by IWO. There was also proof of potential negative impact on views from widely used areas of natural beauty—i.e., Thacher State Park and the Helderberg Escarpment—and this potential impact was not fully evaluated by petitioners, who, for example, supplied only one photograph taken from a parking lot in this area. Upon review of the record, we find that the evidence that was before the ZBA provided more than a scintilla of proof to support its determination.

Nor do we find merit to petitioners' contention that the ZBA effectively banned wireless service from the community by its action. While local governments are prohibited by the Federal Telecommunications Act of 1996 from making decisions that have the effect of banning wireless service (*see* 47 USC § 332 [c] [7] [B] [i] [II]), the denial of the placement of a particular facility does not necessarily establish a prohibition of wireless service (*see Town of Amherst v Omnipoint Communications Enters.*, 173 F3d 9, 14 [1999]). Where, as here, there is evidence in the record of the availability of a feasible alternative that is less intrusive, the ZBA's denial of permission to build this particular tower does not violate the federal statute. Petitioners' remaining arguments have been considered and found unpersuasive.

Mercure, J.P., Carpinello and Rose, JJ., concur. Ordered that the judgment is affirmed, without costs.